# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.F., | : | CASE SEALED |
| Petitioner | : | |
| | : | No. 574 M.D. 2020 |
| v. | : | |
| | : | Argued: December 15, 2021 |
| Pennsylvania Department of Human | : | |
| Services; Teresa D. Miller, in her | : | |
| official capacity as secretary of the | : | |
| Department of Health and Human | : | |
| Services; Pennsylvania Professional | : | |
| Standards and Practices Commission, | : | |
| | : | |
| Respondents | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge[1]
HONORABLE MARY HANNAH LEAVITT, Judge[2] (P.)
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE McCULLOUGH                    FILED: July 11, 2023


S.F. (Petitioner), a former teacher certified by Pennsylvania Department
of Education (PDE) and employed by a public school district (School District), has
filed a six-count petition for review (PFR) in the nature of a complaint in equity,
mandamus, and for declaratory relief against the Pennsylvania Department of Human

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

Services (DHS), Teresa D. Miller,[3] in her official capacity as Secretary (Secretary), and the Pennsylvania Professional Standards and Practices Commission (PSPC) (collectively, Respondents). Petitioner has filed an application for partial summary relief on **Counts I**, **III**, and **V**. The application for partial summary relief calls upon this Court to address the question of whether the process available to an alleged perpetrator under the current version of the Child Protective Services Law (CPSL), 23 Pa. C.S. §§ 6301-6386, satisfies constitutional procedural due process standards in the context of teachers.[4] Specifically, Petitioner asks this Court to hold that she, and teachers like herself, are entitled to a pre-deprivation hearing prior to being listed as a perpetrator in either (1) an indicated report of child abuse; or (2) a founded report of child abuse when the basis of the founded designation is entrance into an accelerated rehabilitative disposition (ARD) program. Respondents have filed a cross-application for partial summary relief on those same counts on grounds of lack of standing and ripeness.

Although in recent years, this Court and our Supreme Court have expressed concerns that the CPSL may permit the deprivation of protected interests without required constitutional protections, no court has, until now, addressed whether due process requires *pre-deprivation* procedures in the CPSL with regard to teachers. After careful consideration, we conclude that the CPSL, when implemented together with the Educator Discipline Act[5] (Educator Discipline Act), contained within the

---

[3] Teresa D. Miller is no longer the Secretary of Human Services. Dr. Val Arkoosh is now the Secretary of Human Services as of June 29, 2023.

[4] As used herein, the term "teacher" includes those individuals who hold one of the enumerated teaching certificates listed in Section 1201 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 12-1201.

[5] Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. §§ 2070.1a-2070.18c.

School Code, does not provide for our Constitution's guarantee of due process. It is without question that the government has a paramount interest in keeping child abuse out of our schools and doing so in an expeditious manner. As this has necessarily involved the preliminary deprivation of constitutionally protected interests in property and reputation, the government also has an equal interest in not stigmatizing those who are innocent or wrongfully accused or foreclosing them from employment and other opportunities prior to being named on an indicated report of child abuse. The pre-deprivation procedures provided for below do not hinder the expeditious removal of an abuser from the school premises; they merely ensure that those teachers who are alleged to be an abuser are not deprived of their constitutional right to due process before being listed as a perpetrator of abuse in an indicated report of child abuse. This case does not involve the determination of whether child abuse occurred in this matter, but only whether the CPSL protects constitutional guarantees to due process before a teacher is listed in the ChildLine and Abuse Registry (ChildLine Registry). Our determination also does not prevent a school from implementing any lawful procedures to initially remove a teacher whom it believes has engaged in child abuse. For the reasons that follow, Petitioner's application for partial summary relief as to **Counts I** and **III** is granted. With respect to **Count V**, we agree with the arguments advanced by Respondents and deny Petitioner's application for partial summary relief. The cross-application for partial summary relief filed by Respondents is granted as to Count V only and denied in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

In the fall of 2018, Petitioner was a special education teacher in the School District. On September 14, 2018, Petitioner was alleged to have forced a 6-year-old special needs student to walk up and down a flight of stairs over 100 times. A report

of suspected child abuse was referred to the local County Children and Youth Services (CYS), which investigated and interviewed Petitioner and the child and reviewed video surveillance footage of the incident. Petitioner acknowledged making the child walk up and down the stairs as a form of getting the child to calm down. CYS's investigation concluded that the allegations of abuse were substantiated and that an indicated report of child abuse would be issued. Petitioner was notified that as of November 30, 2018, she was listed on the statewide ChildLine Registry as a perpetrator in an indicated report of child abuse. The notice from DHS informed Petitioner,

> An indicated report means that a county children and youth agency or the Pennsylvania [DHS] has made a determination that you committed abuse. Your name will remain on file in the statewide database indefinitely if your social security number or date of birth is known.
>
> As a perpetrator in an indicated report, you will probably be prevented from working in an organization serving children or a public or private school or from becoming a foster care or adoptive parent. As a perpetrator, you could also be prevented from volunteering in an organization serving children or public or private school or from obtaining certain educational degrees or certificates. Other volunteer and employment opportunities may also be negatively affected.
>
> **If you disagree with the determination that you have committed abuse, and you want your name removed from the Statewide Database, you have two options**.
>
> (1) You must appeal to [DHS] **within 90 days of the mailing date listed at the top of this notice**.
>
> To appeal you can use the enclosed form and check off the first box on the form. You may also write a letter requesting the appeal.
>
> OR

4

(2) You have a right to a hearing now. You can skip the appeal described above and ask the Bureau of Hearings and Appeals [(BHA)] for that hearing. This request must be made **within 90 days of the mailing date listed at the top of this notice**.

(Exhibit B to Petitioner's Brief in Support of Application for Summary Relief) (emphasis in original).

Petitioner was interviewed but **received no hearing before a neutral adjudicator prior to being listed as a perpetrator of child abuse on the ChildLine Registry**. Petitioner sought administrative review of the indicated report pursuant to Section 6341(a)(2) of the CPSL, 23 Pa. C.S. § 6341(a)(2).[6]

On December 26, 2018, an educator misconduct complaint was filed with the PDE pursuant to section 9 of the Educator Discipline Act, 24 P.S. § 2070.9,[7] which alleged that Petitioner was the subject of an indicated report of child abuse. By letter dated March 12, 2019, DHS denied Petitioner's request for administrative review, concluding that the report was accurate and was maintained in a manner consistent with the CPSL. Petitioner appealed to BHA, and a hearing was scheduled before an Administrative Law Judge (ALJ) for July 21, 2019.

---

[6] Section 6341(a)(2) provides:

> Any person named as a perpetrator, and any school employee named, in an indicated report of child abuse may, within 90 days of being notified of the status of the report, request an administrative review by . . . . the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by [DHS].

23 Pa. C.S. § 6341(a)(2).

[7] Added by the Act of December 14, 1989, P.L. 612.

Before the hearing, CYS requested a stay because Petitioner was charged with a misdemeanor count of 18 Pa. C.S. § 4303, Endangering the Welfare of Children (EWOC), and criminal proceedings had commenced. The BHA then stayed Petitioner's administrative appeal. Also due to the criminal charge, the PSPC directed the PDE to suspend Petitioner's teaching certificate and employment eligibility pursuant to section 9.2(a)(1) of the Educator Discipline Act, 24 P.S. § 2070.9b(a)(1),[8] which requires such suspensions.

On June 26, 2020, Petitioner entered into ARD in connection with her EWOC charge. As a condition of entering ARD, the District Attorney required Petitioner to surrender her teaching certificate in lieu of further disciplinary proceedings. By order dated September 29, 2020, the PSPC accepted Petitioner's surrender of her certificate of employment eligibility.

On October 15, 2020, Petitioner filed her PFR. In **Count I**, Petitioner seeks a declaration that section 6368 of the CPSL, 23 Pa. C.S. § 6368, is constitutionally deficient under article I, section 1 of the Pennsylvania Constitution[9] and the United States Constitution (as applied to Petitioner and other teachers and on its face) as it provides no pre-deprivation due process to such individuals listed as perpetrators in an "indicated" report of child abuse. In **Count III**, Petitioner seeks a declaration that section 6303 of the CPSL, 23 Pa. C.S. § 6303, is unconstitutional as applied to Petitioner and other teachers and on its face because it provides no due process to individuals listed as perpetrators of a "founded" report of child abuse when the basis of the founded report is acceptance into ARD. **Count V** seeks a writ of

---

[8] Added by the Act of December 20, 2000, P.L. 918.

[9] Article I, section 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

mandamus ordering Respondents to remove Petitioner's existing report from the ChildLine Registry. Respondents timely filed an answer with new matter on February 8, 2021.

On July 9, 2021, Petitioner filed her application for partial summary relief, seeking judgment in her favor as to **Counts I**, **III**, and **V**.[10] Respondents filed a cross-application for partial summary relief on **Count I**, **Count III** (lack of standing because Petitioner has never been the subject of a "founded" report of child abuse), and **Count V** (because DHS has no duty to remove an indicated report of child abuse from the ChildLine Registry).

## II. LEGAL BACKGROUND

### A. THE CPSL SCHEME AS APPLIED TO TEACHERS

#### 1. The Initial Report and Investigation

The CPSL provides a comprehensive framework for reporting and investigating child abuse. The CPSL created a statewide database of protective services known as the ChildLine Registry. 23 Pa. C.S. § 6331. This registry contains, *inter alia*, reports of suspected child abuse. *Id*. Section 6312 of the CPSL allows "[a]ny person" with "reasonable cause to suspect" child abuse to make a report of suspected child abuse. 23 Pa. C.S. § 6312. Additionally, Section 6311(a) of the CPSL requires certain adult individuals designated as mandated reporters (including health care workers, school employees, clergy, law enforcement officers and foster parents), to report suspected child abuse if they have "reasonable cause to suspect that a child is a

---

[10] Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). In constitutional challenges, "the challenger bears the heavy burden of demonstrating that the statute 'clearly, plainly, and palpably violates the Constitution,' as [courts] presume that [their] sister branches act in conformity with the Constitution." *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911, 929 (Pa. 2017).

victim of child abuse." 23 Pa. C.S. § 6311(a). Once an allegation of child abuse is submitted to the ChildLine Registry, DHS refers the matter to the child protective services agency of the county where the alleged abuse has occurred. 23 Pa. C.S. § 6334(b). Within 24 hours of receiving the allegation, a caseworker employed by the county agency must begin an investigation. 23 Pa. C.S. § 6368(b), 6368(d)(4). The CPSL requires that, at a minimum, the caseworker must interview the victim and alleged perpetrator, if the alleged perpetrator can be found. 23 Pa. C.S. § 6368(d)(4).[11] DHS regulations provide that the investigator shall, if possible, also interview the child's parents, the reporter, eyewitnesses, neighbors, relatives, day care providers, or school personnel. 55 Pa. Code § 3490.55. The investigation shall include:

> (1) A determination of the safety of or risk of harm to the child or any other child if each child continues to remain in the existing home environment.
>
> (2) A determination of the nature, extent and cause of any condition listed in the report.
>
> (3) Any action necessary to provide for the safety of the child or any other child in the child's household.

---

[11] Section 6368(d)(4) of the CPSL states in this regard:

> (d) Investigative actions--During the investigation, all of the following shall apply:
>
> * * *
>
> (4) The investigation shall include interviews with all subjects of the report, including the alleged perpetrator. If a subject of the report is not able to be interviewed or cannot be located, the county agency shall document its reasonable efforts to interview the subject and the reasons for its inability to interview the subject. The interview may be reasonably delayed if notice of the investigation has been delayed pursuant to subsection (m).

23 Pa. C.S. § 6368(d)(4).

(4) The taking of photographic identification of the child or any other child in the child's household, which shall be maintained in the case file.

(5) Communication with [DHS's] service under section 6332 (relating to establishment of Statewide toll-free telephone number).

23 Pa. C.S. § 6368(c).

If a report of child abuse possibly includes a violation of the criminal laws, the county agency's investigation must be conducted jointly with local law enforcement. 23 Pa. C.S. § 6334.1. In such circumstances, county agencies and the district attorney for the county where the alleged abuse occurred must convene a "multidisciplinary investigative team" that coordinates interviews with the alleged perpetrator. 23 Pa. C.S. § 6365.

After completing its investigation, the agency must submit a CY-48 form to ChildLine designating the report of child abuse as "unfounded," "indicated," or "founded." 23 Pa. C.S. § 6368(c); 55 Pa. Code § 3490.67. A report is indicated if "substantial evidence of the alleged abuse exists" based on available medical evidence, the child protective service investigation, or an admission by the perpetrator. 23 Pa. C.S. § 6303. "Substantial evidence" is defined as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." *Id*.

### 2. Teachers Named in Indicated Reports

If the allegations relate to a teacher, the CPSL imposes a mandatory duty on DHS to send notice of the allegations to the relevant school employer. 23 Pa. C.S. § 6340(a)(13). Upon receiving notice of an investigation of suspected child abuse involving a teacher, school employers must "immediately implement a plan of

9

supervision or alternative arrangement for the individual under investigation to ensure the safety of the child and other children who are in the care of the school." 23 Pa. C.S. § 6368(i). This plan of supervision or alternative arrangement must be approved by the county agency and continue until the county agency completes its investigation. *Id*.

### 3. Post-Deprivation Remedies Available to Teachers

The CPSL provides individuals named as perpetrators in an indicated report of child abuse with post-deprivation remedies. First, the CPSL provides for administrative review by DHS. 23 Pa. C.S. § 6341(a)(2). DHS must provide notice of the decision to the alleged perpetrator within 60 days of the request for administrative review. 23 Pa. C.S. § 6341(a)(3). Second, if DHS refuses to grant relief at the administrative review stage, "the perpetrator or school employee shall have the right to appeal and request a hearing before the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter." 23 Pa. C.S. § 6341(c). Individuals also have the right to skip the administrative review stage and go directly to a hearing. 23 Pa. C.S. § 6341(a)(2). Hearings are conducted by ALJs working within BHA, and the burden of proof falls on the county agency that made the determination. *Id*. Hearings must be commenced within 100 days of the date DHS receives the appeal. 23 Pa. C.S. § 6341(c.2) (requiring BHA to issue a scheduling order within 10 days, and that a hearing shall commence within 90 days of the scheduling order). The CPSL also requires the hearing examiner to issue a decision within 45 days, or 105 days if the hearing examiner has good cause for a 60-day extension. 23 Pa. C.S. § 6341(c.3). Indicated reports remain on the ChildLine Registry while any requests for review or appeals are pending.

### 4. Founded Report

10

A "founded report" of child abuse is a determination where a suspect is deemed guilty of child abuse through a judicial process that is distinct from the county agency investigation detailed above. A "founded report" is defined by an exhaustive list of situations in Section 6303 of the CPSL, and, as relevant here, may include when, *inter alia*, "there has been an acceptance into an [ARD] program and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse." 23 Pa. C.S. § 6303(2). The CPSL affords individuals named as perpetrators in founded reports of child abuse no rights to administrative or judicial review.

### 5. ARD

ARD is a pretrial disposition of certain criminal cases, governed primarily by Chapter 3 of the Pennsylvania Rules of Criminal Procedure, which suspends formal criminal proceedings before conviction and provides the accused with certain rehabilitative conditions, the completion of which results in the dismissal of the pending criminal charges and a clean record for the defendant. *J.F. v. Department of Human Services*, 245 A.3d 658, 661-62 (Pa. 2021). If a district attorney agrees to a defendant's request for inclusion into ARD, a hearing on the motion is held in open court wherein it is "ascertained on the record whether the defendant understands that (1) acceptance into and satisfactory completion of the [ARD] program offers the defendant an opportunity to earn a dismissal of the pending charges," and (2) failure to complete the program waives applicable statute of limitations and the right to a speedy trial. *See* Pa. R. Crim. P. 312. The judge hears the facts presented by the district attorney and any information the defendant and the victim choose to present. Pa.R.Crim.P. 313(b). If the judge believes ARD is appropriate, the judge states the conditions of ARD on the record; otherwise the case proceeds on the charges. Pa. R. Crim. P. 313(c). The defendant then states whether she accepts conditions of ARD and

11

agrees to comply, and if she agrees, the judge may grant the motion for ARD and enter an order imposing conditions. Pa.R.Crim.P. 313(D). Upon satisfactory completion of the program, a defendant may move the court for an order dismissing the charges, and if the motion is granted, the judge also enters an expungement order of the defendant's arrest record. Pa.R.Crim.P. 320.

### 6. Educator Discipline and the ChildLine Registry

Teachers who hold certificates from PDE are subject to the provisions of the Educator Discipline Act. In situations where a certificated teacher is named as a perpetrator in an indicated report of child abuse, the PSPC may, after providing notice and offering a hearing, impose professional discipline upon the teacher. If, however, the teacher is named as a perpetrator in a founded report of child abuse, the Educator Discipline Act mandates immediate revocation of the teacher's certificate. 24 P.S. § 2070.9d(a)(1). Section 9.4(a)(1) of the Educator Discipline Act provides that the PSPC shall:

> [d]irect [PDE] to revoke the certificate and employment eligibility of an educator who is named as the perpetrator of a founded report of child abuse or named as an individual responsible for injury or abuse in a founded report for a school employe under [the CPSL] upon receipt of documentation verifying the founded report.

24 P.S. § 2070.9d(a)(1).[12]

The Educator Discipline Act does not provide certificated teachers with an opportunity to be heard on the revocation of teaching certificates when the basis for revocation is that the teacher was named as a perpetrator in a founded report of child abuse. Instead, the Educator Discipline Act provides that if a founded report is "reversed or determined to be unfounded," the PSPC "must immediately reinstate a

---

[12] Added by the Act of December 18, 2013, P.L. 1205.

12

certificate upon receipt of a certified document establishing" that fact. 24 P.S. § 2070.9d(a)(2).

### III. DISCUSSION

### A. PETITIONER'S APPLICATION FOR PARTIAL SUMMARY RELIEF

### 1. Count I – Declaratory Relief – Constitutionality of section 6368 of the CPSL

In her first issue, Petitioner seeks summary relief on **Count I** of her PFR, which asks for a declaration that section 6368 of the CPSL is constitutionally deficient under the Pennsylvania and United States Constitutions as applied to Petitioner and other teachers because it provides no pre-deprivation due process to teachers listed as perpetrators in indicated reports of child abuse.[13] Petitioner contends that teachers, like her, who hold a teacher's certificate have a constitutionally protected property right in the practice of that profession. She maintains that individuals accused of child abuse also have a protected liberty interest in their reputations which entitles them to procedural due process under the Pennsylvania Constitution. She argues that teachers named as perpetrators in indicated reports face reputational and employment consequences to a significantly greater degree than other individuals so named. Petitioner argues that due process requires that she and other teachers receive some sort of *pre-deprivation* hearing prior to being named as a perpetrator in an indicated report

---

[13] We note that the relief Petitioner seeks in **Counts I**, **III**, and **V** of her application for partial summary relief is narrower than the relief requested in the PFR in that Petitioner does not seek a declaration here that Sections 6303 and 6368 of the CPSL are unconstitutional *on their face*. Rather, she seeks a declaration that Sections 6303 and 6368 of the CPSL are unconstitutional under the Pennsylvania Constitution *as applied to herself and other teachers*.

A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. *Peake v. Department of Human Services*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015).

of child abuse. She acknowledges that she may seek recourse through a *post-deprivation* hearing. However, she argues that the fact that a hearing occurs *after* an indicated report is issued does not satisfy the demands of constitutional due process.

In response, Respondents counter that there has been no deprivation of Petitioner's constitutional reputational interest because the ChildLine Registry is a closed and confidential database. They further contend that Petitioner has not proven how she has been deprived of her right to pursue her lawful occupation by being placed on ChildLine Registry because she is free to pursue her profession. They also argue that even if Petitioner is successful in proving a sufficient deprivation of a constitutional interest by being identified on an indicated report on the ChildLine Registry, due process is satisfied by the *post-deprivation* administrative review and hearing process established by the General Assembly in the CPSL, and because of the undisputed urgent need to protect children from further abuse.

### a. Due Process and the Child Protective Services Law

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. A similar protection, that no "State [shall] deprive any person of life, liberty, or property, without due process of law," is contained in the Fourteenth Amendment to the United States Constitution. U.S. CONST. amend. XIV, § 1.

Due process is fully applicable to administrative hearings involving substantial property and/or liberty rights. *C.S. v. Department of Human Services, Bureau of Hearings and Appeals*, 184 A.3d 600, 603-04 (Pa. Cmwlth. 2018). Under both our federal and state constitutions, the basic elements of procedural due process are "adequate notice, the opportunity to be heard, and the chance to defend oneself

14

before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013).[14] The United States Supreme Court has consistently held that "some form of hearing" is required before a final deprivation of a protected interest, although the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *C.S.*, 184 A.3d at 607. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Courts examine procedural due process in two steps: the first asks whether there is a life, liberty, or property interest with which the state has interfered, and the second examines whether the procedure attendant to that deprivation are constitutionally sufficient. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). In *Mathews*, 424 U.S. 319, the Supreme Court developed, and we have embraced, a balancing test that augments the second step of the due process analysis to assess the constitutional sufficiency of the statutory procedure. First, we must consider the private interest that will be affected by the official action. Second, we consider the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Third, we consider the government's interest, including the function involved and the

---

[14] There is a strong presumption that legislation like the CPSL is constitutional and, therefore, cannot be declared unconstitutional unless it is found to "clearly, palpably and plainly" violate the Constitution. *Commonwealth v. Craven*, 817 A.2d 451, 454 (Pa. 2003) (quotation omitted); 1 Pa. C.S. § 1922(3) (presuming that "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth"). Further, because Petitioner is challenging the constitutionality of the CPSL, she "bear[s] a heavy burden of persuasion" with respect to her claims. *Commonwealth v. MacPherson*, 752 A.2d 384, 388 (Pa. 2000). Any doubts about whether Petitioner has met this high burden must be resolved in favor of finding the statute constitutional. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 393 (Pa. 2005).

15

fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *City of Philadelphia v. Perfetti*, 119 A.3d 396, 403 (Pa. Cmwlth. 2015) (*en banc*). The *Mathews* calculus contemplates a judicious balancing of these concerns. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

### i. *Private Interest Affected by Official Action*

Applying the above precedent, we first decide as a threshold matter whether Petitioner, a special education teacher, has a protected liberty or property interest that is affected by being listed in the ChildLine Registry. This is easily answered as our Court has previously answered this question in the affirmative. While our courts have not yet answered the question of "how much process is due" in this situation, the notion that a teacher's due process rights are implicated by placement on the ChildLine Registry is settled.

In *J.P. v. Department of Human Services*, 170 A.3d 575, 581 (Pa. Cmwlth. 2017), a teacher was accused of student abuse and he was reported to the ChildLine Registry as a perpetrator. In response to the notice, the petitioner sent a letter requesting that the indicated report be destroyed or amended based on errors in the report, and he requested a hearing if one was necessary. *Id*. at 578. DHS sent two more notices indicating its belief that the report was accurate. The petitioner did not respond to the subsequent notices and continued to work as a teacher. Approximately 15 years later, the petitioner learned he was listed on the ChildLine Registry and requested, *nunc pro tunc*, a hearing on the indicated report. *Id*. Before the ALJ, the petitioner testified that he did not receive the second and third notices and argued that he had requested a hearing in his response to the first notice. The ALJ recommended dismissal of the petitioner's appeal as untimely, which the BHA adopted, and the petitioner appealed to this Court. The issue before us was whether the process the

16

petitioner received was constitutionally sufficient. Because the petitioner argued that he was denied procedural due process, we examined whether placement on a registry for alleged child abuse causes damage to the alleged abuser. In concluding that it does, we explained that "[p]lacement on a registry for alleged child abuse causes damage to the alleged abuser, primarily in the form of reputational harm and employment repercussions." *Id*. at 581.

Subsequently, in *C.S.*, we found that the provisions of the CPSL, which prohibited an accused individual from using transcripts of witnesses' testimony in a child abuse expunction proceeding to cross-examine those witnesses in a licensing matter, violated due process. Reviewing the pertinent case law, we first found that the petitioner, a certified teacher, had a

> protected property interest in his profession and a fundamental liberty interest in his reputation. *See D.C. v. Department of Human Services*, 150 A.3d 558, 564 (Pa. Cmwlth. 2016) (*en banc*). It is a bedrock principle that once a professional license is acquired, it becomes "a valuable privilege or right in the nature of property," *Shah v. State Board of Medicine*, . . . 589 A.2d 783, 787 (Pa. Cmwlth. 1991), and "[t]here is little doubt that [the p]etitioner has a substantial interest to be protected." *Bhattacharjee v. Department of State,* [*State Board of Medicine*], 808 A.2d 280, 283 (Pa. Cmwlth. 2002); *see Telang*[*v. Bureau of Professional and Occupational Affairs*], 751 A.2d 1147[,] 1150 [Pa. 2000)]. Where, as here, an administrative body is empowered to impose sanctions, which may include the revocation of a license to practice in the Commonwealth, "our courts have frequently recognized the severity of depriving a person of the means of a livelihood." *Shah*, 589 A.2d at 789.

*C.S.*, 184 A.3d at 604.

We explained that "[u]pon receiving his educator's license, [the petitioner] secured a protected property interest in the practice of his profession, and as such, 'he must be afforded procedural due process in adjudicating any administrative charges against him.'" *Id*. We concluded that the petitioner also possessed a protected liberty interest in his reputation, which independently entitled him to procedural due process protection under the Pennsylvania Constitution as an individual accused of child abuse. *Id*.

Based on this precedent, we agree with Petitioner that, because she is a certificated teacher, her property and reputational interests are impacted by being named as a perpetrator in an indicated report of child abuse.

### ii. *Mathews - Constitutional Sufficiency of Procedures*

We turn next to the *Mathews* factors to determine if the procedures available to Petitioner to protect the interests at stake were constitutionally sufficient. The constitutionality of Pennsylvania's current process under the CPSL, which allows the name of a certificated teacher to be placed on the ChildLine Registry as a perpetrator in an indicated report without a pre-deprivation hearing, is a matter of first impression.[15]

---

[15] As noted, although the issue is one of first impression, our courts have previously expressed concerns that the lack of a pre-deprivation hearing before being named in an indicated report on the ChildLine Registry raises serious due process questions. In *D.C.*, the lack of a pre-deprivation hearing in the CPSL was not directly at issue, but we noted that

> [b]ecause the indicated report goes into the registry without a hearing, the perpetrator does not know the evidence on which the determination was made. The indicated report itself contains only a brief description of abuse.

150 A.3d at 564. The Court further stated: "The lack of a pre-deprivation hearing in the [CPSL] raises a serious due process question." *Id*. *See also K.J. v. Pennsylvania Department of Public Welfare*, **(Footnote continued on next page…)**

18

### a.      *Private Interest Affected by Official Action*

The first *Mathews* factor requires us to identify the weight to be given to the private interests affected by the official action challenged. As discussed above, we have concluded that Petitioner has a property interest in pursuing her employment as a teacher and working with children and she has a fundamental liberty interest in not being labeled a child abuser. In this first *Mathews* factor, we consider the "degree of potential deprivation" or "impact" created by the official action on the private interests. *Mathews*, 424 U.S. at 341.

### *Impact on Reputation*

The preservation of an individual's reputation is fundamental as it is recognized and protected by the Pennsylvania Constitution. As such, and as we have previously stated, that right cannot be abridged without compliance with constitutional standards of due process and equal protection. *Simon v. Commonwealth*, 659 A.2d 631, 639 (Pa. Cmwlth. 1995) (noting that lack of a forum for an individual who believes that his reputation has been adversely affected to seek a remedy until after the possible

---

767 A.2d 609, 616 n.9 (Pa. Cmwlth. 2001) (Friedman, J., dissenting) (noting that by the time [DHS] orders the expunction of an indicated report, "a person's reputation already may be tarnished erroneously"); *G.V. v. Department of Public Welfare*, 91 A.3d 667, 675-76 (Pa. 2014) (Saylor, J., concurring) (noting "the inquiry into whether the [CPSL] reflects adequate process remains seriously in question," adding that the current system "is in tension with the constitutional preference for pre-deprivation process").

We also note that other courts have already addressed the issue and held that due process requires a pre-deprivation hearing before a citizen can be placed on a government-maintained list of child abusers. *See, e.g.*, *Jamison v. State of Missouri, Department of Social Services*, 218 S.W.3d 399 (Mo. 2007) (holding that held that Missouri's version of the CPSL violated due process because it failed to provide a pre-deprivation hearing before the alleged perpetrator is listed on a child abuse registry); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1186 (9th Cir. 2008), *as amended* (January 30, 2009), *rev'd on other grounds*, *Los Angeles County, California v. Humphries*, 562 U.S. 29 (2010); *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *In re W.B.M.*, 690 S.E.2d 41 (N.C. Ct. App. 2010); *Cavarretta v. Department of Children and Family Services*, 660 N.E.2d 250 (Ill. Ct. App. 1996).

damage has been done was "clearly an unconscionable abrogation of a state protected constitutional right without due process"). It goes without saying that serious adverse social consequences flow from being placed on the ChildLine Registry as a person suspected of child abuse.[16] However, the parties disagree as to the degree of the harm to Petitioner's reputation as the result of being named as a perpetrator in an indicated report, with Petitioner arguing it is substantial and Respondents arguing that is not.

A central argument raised by Petitioner is that the CPSL scheme imposes far greater harm to teachers accused of child abuse than to other accused individuals. With respect to reputational harm, Petitioner argues that the number of people to whom notice of an indicated report is given is exponentially higher for teachers as compared to non-educators. For example, as it pertains to teachers, school administrators receive notice of a pending allegation and the final status of the report following the investigation as to whether the report is indicated, founded, or unfounded. 23 Pa. C.S. § 6340(a)(13)(i). If the alleged perpetrator is a teacher, the notice of the final status of the report shall be sent to the PDE within 10 days of the completion of the investigation. 23 Pa. C.S. § 6340(a)(13)(iii). Upon receiving formal notice, school employers must take action and "immediately implement a plan of supervision or alternative arrangement for the individual under investigation." 23 Pa. C.S. § 6368(i). This requirement invariably involves others in the school and community. Furthermore, potential employers are required to receive notice of a teacher's inclusion in the ChildLine Registry. Under Section 111.1(b)(1)(iii)(A) of the School Code, before a

_____

[16] It cannot seriously be questioned that an allegation of child abuse harms an individual's reputation and deters others from associating or dealing with the individual. Indeed, as one court directly observed, "to be accused of child abuse may be our generation's contribution to defamation *per se*, a kind of moral leprosy." *Humphries*, 554 F.3d at 1186. *See also Thomas v. Buckner*, 2011 WL 4071948, at *14 (M.D. Ala. Sept. 13, 2011) ("mere allegation of child abuse is enough to make one a pariah of society").

school entity may offer employment to an applicant who would be in a position involving direct contact with children, the school entity is required to determine if the applicant has been the subject of an abuse investigation. 24 P.S. § 1-111.1(b)(1)(iii)(A).[17] Concomitantly, a teacher who is the subject of an indicated report must disclose to potential employers that she has been the subject of an abuse misconduct investigation. *Id*. Under the CPSL, if the teacher seeks any other job that has direct contact with children, she must disclose to prospective employers that she is named in the ChildLine Registry as a perpetrator in an indicated report. 23 Pa. C.S. § 6344(b)(2). Thus, argues Petitioner, the moment she is placed on the ChildLine Registry as an alleged perpetrator in an indicated report, her reputation in the eyes of her employer, any potential employers, state agencies, and possibly colleagues, students, and parents, is irreparably damaged.

For their part, Respondents disagree that Petitioner suffered any injury to her reputation of a constitutional significance by being named as a person suspected of child abuse on the ChildLine Registry. They cite to *R. v. Department of Public Welfare*, 636 A.2d 142 (Pa. 1994), and *G.V.*, and argue that because the ChildLine Registry is confidential and closed, Petitioner has not been deprived of her right to reputation.

In *R.*, the Pennsylvania Supreme Court considered a father's appeal of an indicated report. The father asserted that he was denied due process during his administrative hearing when the hearing examiner made credibility determinations of witnesses the father did not see or hear testify and allowed the father's daughter to testify *in camera*. *Id*. The Court employed the *Mathews* test and considered the private interest at stake. The Court acknowledged that the right to reputation is implicated by the CPSL, but reasoned that, as to the father, the information would only be viewed by

---

[17] Added by the Act of October 22, 2014, P.L. 2624.

21

government officials and only if he attempted to adopt a child or applied to work in a position with direct contact with children, a career in which he did not work or have any interest in pursuing. 636 A.2d at 149-50. Given the facts in that matter, the Court concluded that

> [the father] is not being stigmatized in the eyes of the general public. To the contrary, **his identity is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals. Therefore, any adverse effects on his reputation are very limited**.

*R.*, 636 A.2d at 150 (emphasis added).

The circumstances in *R.* are distinguishable. Here, unlike the father in *R.*, whose reputation would not be harmed so long as he did not attempt to adopt a child or apply for a job in a school or childcare setting, teachers, like Petitioner, are immediately harmed when allegations against them are made to the ChildLine Registry. As discussed, teachers accused of child abuse cannot shield accusations from the view of their employer, prospective employers, colleagues, and conceivably, the parents of the students they serve.

*G.V.* is distinguishable for the same reason. In *G.V.*, the Supreme Court reaffirmed these tenets with approval and rejected a contrary view that information on the ChildLine Registry was likely to be disclosed to others not listed in Section 6340(a) of the CPSL. *G.V.*, 91 A.3d at 673. There, the Court found that an indicated report filed in the ChildLine Registry against an uncle accused of sexually abusing his great niece did not deprive him of a reputational interest, noting again, the minimal risk of disclosure to those not authorized by the statute to receive the same. *Id*.

The petitioners in *R.* and *G.V.* were not teachers and were not subject to the provisions discussed above that cause reputational harm to teachers. Unlike the confidentiality of the reports filed against the father in *R.*, and the uncle in *G.V.*,

22

knowledge of the indicated report filed against Petitioner in the vicinage of her employment is inevitable and inescapable. *See Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (rejecting a similar argument that a childcare employee's inclusion on New York's Central Register resulted in no reputational damage because there was no disclosure of information on the Central Register except to authorized state agencies or potential employers in the childcare field. The *Valmonte* Court found that "[d]issemination to potential employers . . . is the precise conduct that gives rise to stigmatization.").

Accordingly, we conclude that teachers, like Petitioner, named as perpetrators in indicated reports face significant reputational consequences that are unique, as present and potential school employers, the PDE, and the PSPC are notified of any indicated reports of child abuse involving a teacher.

### *Impact on Employment*

In addition to damage to her reputation, Petitioner argues that a teacher placed on the ChildLine Registry, as a perpetrator in an indicated report, will almost certainly have a difficult, if not impossible, time retaining and/or acquiring a teaching position.

Our courts have frequently recognized the severity of depriving a person of the means of a livelihood. *Shah*. Employment bars are the most severe form of infringement on an employee's liberty and property interests associated with their employment and clearly implicate due process. *Peake*, 132 A.3d at 518.

Under Act 168,[18] teachers are required, as part of the application process, to complete a Commonwealth of Pennsylvania Sexual Misconduct/Abuse Disclosure Form (Act 168 Form). Act 168 Forms are standard forms developed by the PDE.

---

[18] Act of October 22, 2014, P.L. 2624, No. 168, 24 P.S. § 1-111.1.

Under the School Code, a school entity must obtain a completed Act 168 Form before it may offer employment to an applicant that will "be employed by or in a school entity in a position involving direct contact with children." Section 111.1(b)(1)(iii)(A)-(B) of the School Code, 24 P.S. § 1-111.1(b)(1)(iii)(A)-(B). As part of this process, the school entity seeking to hire the applicant is required to conduct a review that includes contacting former school employers regarding the information required. Act 168 includes a provision prohibiting prospective employers from hiring any applicant unless the employer first requests a statement from the applicant's previous employers as to whether the applicant was the subject of an investigation by a child protective service agency. 24 P.S. § 1-111.1(b)(2)(ii)(A). Previous employers are required to provide this information to prospective employers within 20 days. 24 P.S. § 1-111.1(d)(1). Pursuant to Act 168, should a school employee leave her position while a hearing on whether she should be classified as a perpetrator of child abuse is pending, the employee must disclose to prospective school employers whether or not she has been the subject of investigation by a child protective services agency, "unless the investigation resulted in a finding that the allegations were false." Section 111.1(b)(1) of the School Code, 24 P.S. § 1-111.1(b)(1). In order to ensure compliance, Act 168 prohibits school districts from entering into any severance or resignation agreement that would have the effect of shielding investigations into allegations that an employee committed child abuse from future employers. 24 P.S. § 1-111.1(g). Finally, Act 168 provides that any applicant for school employment who provides false information to prospective school employers may be subject to criminal prosecution, civil penalties, and professional discipline. 24 P.S. § 1-111.1(c).

Thus, we reject Respondents' argument that Petitioner has not proven how her right to pursue her lawful occupation has been deprived by being placed on

24

ChildLine Registry because she is free to pursue her profession. By her inclusion on the ChildLine Registry, a teacher named as a perpetrator in an indicated report of child abuse faces an almost insuperable impediment to obtaining a position in education. *Dupuy v. Samuels*, 397 F.3d 493, 510-11 (7th Cir. 2005).

Notice of the determination that a teacher is an alleged perpetrator of child abuse may provide cause to discharge her pursuant to Sections 514 (applicable to non-tenured employees) or 1122 of the School Code (causes for termination of contract). 24 P.S. §§ 5-514, 11-1122. If the teacher holds a certificate from PDE, DHS must provide PDE with notice that the certificated individual is named as a perpetrator in an indicated report. Section 9(a) of the School Code, 24 P.S. § 2070.9(a); 23 Pa. C.S. § 6340(a)(13)(iii). If PDE finds probable cause for educator discipline, which is very likely for allegations of child abuse, PDE provides notice to any school employer of that fact. Section 9(e)(4) of the School Code, 24 P.S. § 2070.9(e)(4). Applicants for school employment must provide to school employers "[a] certification from [DHS] as to whether the applicant is named in the [ChildLine Registry] as the alleged perpetrator in a pending child abuse investigation or as the perpetrator of a founded report or an indicated report." 23 Pa. C.S. § 6344(b)(2).

In *Matter of Allegations of Sexual Abuse at East Park High School*, 714 A.2d 339 (N.J. Super. 1998), the Superior Court of New Jersey considered a teacher's challenge to her placement in New Jersey's Central Registry without any type of hearing, but merely the opportunity to submit a statement to an investigatory body known as the Institutional Abuse Investigation Unit. The court analyzed the issue presented in light of the factors relevant to the procedural due process analysis set forth in *Mathews*. The court agreed with the aggrieved teacher that inclusion of her name in the Central Registry caused injury to her reputation and burdened her employment

rights. To that end, the court observed that "[t]he inclusion of her name in the Central Registry is a kind of Sword of Damocles poised above her head. Its clear effect is to inhibit her from even considering any life changes for fear of disclosure." 714 A.2d 339. An incursion on such liberty interests, the court held, entitled the teacher to due process protections under the Federal and New Jersey constitutions. *Id*. at 347.

We believe, as in *East Park*, that the potential loss of employment as a teacher and the right to pursue similar employment are substantial interests that are affected by being named as a perpetrator in an indicated report. Listing a teacher as a perpetrator in an indicated report on ChildLine Registry affects not only the teacher's present employment in the child education field; it effectively bars the teacher from obtaining similar employment or benefits in the future.

Relying on all of the foregoing, we agree with Petitioner that the harm imposed upon teachers is arguably greater than the public at-large and clearly impacts in a negative way their protected interests. Although reports are not generally available to the public, 23 Pa. C.S. § 6339, the CPSL gives numerous persons access to indicated reports involving teachers. Thus, Petitioner has demonstrated that she and other teachers have a significant interest that will be affected by the official action being challenged.[19] We conclude this *Mathews* factor weighs in favor of Petitioner.

---

[19] Respondents point out that being named as a perpetrator in an indicated report does not legally bar a teacher from pursuing her profession. However, employment bans are not the only deprivation to the right to pursue one's occupation protected by the Due Process Clause. *See C.S.*, 184 A.3d at 607 (finding harm to an educator's employment *prospects* based on an indicated report). *See also Valmonte*, 18 F.3d at 1001 (noting that an indicated finding "places a tangible burden" on employment prospects when employers are required to consult a central registry during the hiring process).

## b. *Risk of Erroneous Deprivation/Value of Additional Safeguards*

Turning to the second *Mathews* element, the analysis can be broken into two separate but related parts—the risk that the private interest is being deprived erroneously and the value, if any, of additional safeguards.

### *Risk of Erroneous Deprivation*

Specifically, we are required to first determine whether the procedures contained in the CPSL and applied to Petitioner result in an "erroneous deprivation" of her protected property interest in employment and liberty interest in her reputation. As we evaluate this factor, we ask "considering the current process, what is the chance the state will make a mistake?" *Humphries*, 554 F.3d at 1194. In other words, what is the risk that someone will be erroneously listed?

Currently, Pennsylvania provides some minimal safeguards against erroneously listing someone in the ChildLine Registry. Within 24 hours of receiving an allegation of child abuse, a caseworker employed by the county agency must begin an investigation, which must include, at a minimum an interview of the victim and the accused, if found. 23 Pa. C.S. §§ 6368(b). An indicated report is warranted only if the county agency determines, after completion of the investigation, there is "substantial evidence" of the alleged abuse by the accused. 23 Pa. C.S. § 6303. In cases where the report of child abuse includes an alleged violation of the criminal laws, the county agency and the district attorney for the county where the alleged abuse occurred must coordinate interviews with the alleged perpetrator. 23 Pa. C.S. § 6365.

In her dissent in *K.J.*, Judge Friedman expressed concern that a person's name may be entered on the statewide registry based solely on the investigating caseworker's interviews, credibility determinations, and conclusion that there is "substantial evidence" of child abuse.

27

I note that a person's fundamental interest in protecting his reputation is in danger under the [CPSL] even before [DHS] begins an expunction proceeding. Pursuant to the [CPSL], a person with "reasonable cause to suspect" child abuse files a report. 23 Pa. C.S. §§ 6311 and 6312. A county caseworker investigates the report by interviewing designated persons. 23 Pa. C.S. § 6368; *see* 55 Pa. Code §§ 3490.55(d) and 3490.55(g). The investigating caseworker then, in effect, determines the credibility of those persons, the competency of their statements, the weight of the evidence and whether the weight is substantial enough to support an indicated report of child abuse. 23 Pa. C.S. § 6303. Where the investigating caseworker decides that a person has committed child abuse, an indicated report of child abuse is entered on the statewide child abuse register. 23 Pa. C.S. § 6338. The person named as a perpetrator, *i.e.*, a person who has committed child abuse, has forty-five days to seek expunction of the report. 23 Pa. C.S. §§ 6303 and 6341(a)(2). In the meantime, [DHS] may release the information on the statewide register to many individuals and entities for various purposes. *See* 23 Pa. C.S. §§ 6336, 6338 and 6340.

Thus, the [CPSL] allows a person's name to be entered on the statewide register based solely on the investigating caseworker's determination that there is "substantial evidence" of child abuse. However, "substantial evidence" is that quantum of evidence sufficient to meet a particular burden of proof, and, as indicated above, the [CPSL] does not specifically set forth a burden of proof to guide the caseworker, generally an individual untrained in the law, in deciding whether a person has committed child abuse. Thus, the investigating caseworker makes a report of child abuse without applying any particular burden of proof.

It shocks my conscience that the [CPSL] would allow the investigating caseworker to render a *de facto* adjudication that is adverse to an individual's reputation without an independent adjudicator having had the opportunity to consider the investigator's evidence of child abuse in accordance with established procedures of due process. This

is particularly so because unless, or until, the alleged abuser timely requests an expunction hearing, the names of the falsely accused may nevertheless be released to physicians, child advocates, courts, the General Assembly, the Attorney General, federal officials, county officials, law enforcement officials, the district attorney and others. Thus, by the time [DHS] orders the expunction of an indicated report, a person's reputation already may be tarnished erroneously.

*K.J.*, 767 A.2d at 619 n.9 (Friedman, J., dissenting).

Although the absence of a pre-deprivation hearing in the CPSL was not directly at issue in *K.J.*, we find several of Judge Friedman's observations pertinent here.

### *Pre-Deprivation Investigation*

First, the dangers of providing only a pre-deprivation investigation, as opposed to a pre-deprivation hearing, are evident. The investigation alone, without some means of testing the charges, creates a high risk for erroneous deprivation of rights. An investigation, no matter how extensive, does not replace a hearing. *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895, 901 (8th Cir. 1994); *Jamison*, 218 S.W.3d at 409.

Generally, the Pennsylvania and United States Constitutions require some kind of a hearing before the State deprives a person of a protected liberty or property interest in order to minimize "substantially unfair or mistaken deprivations." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Bell v. Burson*, 402 U.S. 535, 542 (1971); *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972) ("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.").[20]

---

[20] There are limited circumstances where post-deprivation remedies can satisfy due process. *See, e.g.*, *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374 (Pa. Cmwlth. 2017). Post-
**(Footnote continued on next page…)**

The right to a hearing before a government agency, whose proposed action will affect the rights, duties, powers or privileges of, and is directed at, a specific person, has long been embedded in our jurisprudence. In *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291 (Pa. Cmwlth. 1997), we quoted from the decision of the United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543 (1985), and stated:

> [A]n essential principle of due process is that a deprivation of life, liberty, or property [interests] be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." This principal requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Firman*, 697 A.2d at 295 (citations omitted).

Moreover, as we explained in *C.S.*:

> Broadly speaking, the principles of due process "require an opportunity, among other things, to hear the evidence adduced by the opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument." *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 720 (Pa. Cmwlth. 2010). "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses," and this holds true even when "administrative . . . actions were under scrutiny." *Goldberg v. Kelly*, 397 U.S. 254, 269-70 (1970); *see Hammad v. Bureau of Professional and Occupational Affairs, State*

deprivation remedies satisfy the Due Process Clause where the situation dictates that the State take immediate action or it is impracticable to provide any meaningful pre-deprivation process. *Bell v. Burson*, 402 U.S. 535, 542 (1971).

> *Board of Veterinary Medicine*, 124 A.3d 374, 381 (Pa.
> Cmwlth. 2015). The United States Supreme Court has
> described cross-examination as "a right traditionally relied
> upon expansively to test credibility as well as to seek the
> truth." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 259 (1983).
> Indeed, cross-examination is "the greatest legal engine ever
> invented for the discovery of the truth," *California v. Green*,
> 399 U.S. 149, 158 (1970), and is "a vital feature of the law."
> *Greene v. McElroy*, 360 U.S. 474, 497 (1959) (citation
> omitted).

184 A.3d at 604.

Under the process currently afforded by the CPSL, Petitioner, and teachers like her, do not receive any kind of hearing prior to being listed in an indicated report in the ChildLine Registry. Instead, the decision of whether a teacher should be placed in the ChildLine Registry depends upon a caseworker's credibility evaluation of the accused and the witnesses against her. Consequently, the accused is denied the basic elements of procedural due process, *i.e.*, an opportunity to present witnesses, to cross-examine adverse witnesses, and have an impartial adjudicator decide factual and legal issues. *Commonwealth v. Thompson*, 281 A.2d 856 (Pa. 1971); *Lawson v. Pennsylvania Department of Public Welfare*, 744 A.2d 804, 807 (Pa. Cmwlth. 2000); *Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission*, 563 A.2d 548 (Pa. Cmwlth. 1989) (hearing or trial procedure is necessary to resolve these disputed questions of fact).

Additional procedural safeguards, such as an administrative hearing before the BHA, would preclude an erroneous deprivation. *See, e.g.*, *Cherillo v. Retirement Board of Allegheny County*, 796 A.2d 420, 422 (Pa. Cmwlth. 2002) (holding retiree was entitled, prior to the termination of his disability retirement

31

benefits, to a hearing that comports with the Local Agency Law,[21] including the right to present and cross-examine witnesses, the right to a full stenographic proceeding, and the right to an adjudication containing findings of fact). *See also J.F.*, 245 A.3d at 674 ("As there was no other appropriate forum for J.F. to be afforded a full and fair opportunity to be heard on the record, she should have been allowed the opportunity to challenge the founded reports of child abuse in an administrative hearing before the [BHA].").

The nature of the risk of false positive findings of abuse can be demonstrated by the effect later hearings had on substantiation decisions. For example, in *G.V.*, Justice Saylor's concurrence highlighted troubling statistics, noting that the BHA reversed 97% of cases decided on the merits. 91 A.3d at 675-76. Other courts have likewise been troubled by high rates of reversal. In *Humphries*, 554 F.3d at 1200, the Ninth Circuit Court of Appeals noted that an error rate of 50% "does serve as a general indication that a large percentage of the individuals listed on [California's registry] might have a legitimate basis for expungement." In *Jamison*, 218 S.W.3d at 409, the Missouri Supreme Court determined a reversal rate of 35-40% was unacceptable and that "the probable value [of] providing notice and hearing before being listed is significant." In *Dupuy*, 397 F.3d at 505, the court stated that, "[g]iven the importance of the interests of both parties, the decisive factor in this case is the high risk of erroneous deprivation, . . . specifically, the unacceptable 74.6[%] reversal rate for challenged indicated reports under [the Illinois Department of Children and Family Service's] original method of evaluating these claims." In *Valmonte*, the petitioners asserted, without contradiction by the State, that 75% of the challenged reports of abuse were successfully expunged. According to the Second Circuit, "[i]f 75% of those

---

[21] 2 Pa. C.S. §§ 551-555, 751-754.

challenging their inclusion on the list are successful, we cannot help but be skeptical of the fairness of the original determination." 18 F.3d at 1003-004.

Here, Petitioner has presented evidence that reversals of indicated reports by ALJs are extremely common. She asserts that administrative review by DHS nearly always affirms county determinations of child abuse, but on further appeal to the BHA, ALJs frequently reverse. Petitioner has provided, without contradiction, evidence by way of the Child Protective Services 2019 Annual Report that establishes in 2019, 293 individuals who failed to obtain relief at the administrative review stage appealed to the BHA, and ALJs affirmed only 2 such appeals. (Exhibit E to Petitioner's Br.) Petitioner has also provided undisputed evidence that ALJs overturned 81% of county agency findings, and dismissed numerous others. *Id.* Only 18 county agency determinations out of 340 (roughly 5%) were upheld by ALJs after a hearing.[22] *Id.* Petitioner submits that the reason for this reversal rate is the process provided by the hearing before the ALJ, including cross-examination and the ability to present evidence. Respondents have not challenged the accuracy of these statistics.

### *Post-deprivation hearing*

Respondents argue that Petitioner and other teachers have an effective *post-deprivation* remedy, namely the CPSL's provision providing for a post-deprivation hearing before the BHA at which the sufficiency of the abuse must be established by a fair preponderance of the evidence. Specifically, an alleged perpetrator has the right to appeal a child abuse determination. Section 6341 of the

---

[22] These statistics are consistent with previous years. In 2018, the BHA adjudicated 409 appeals. Out of these 68 (11.5%) were upheld and 301 (74%) were overturned. In 2017, the BHA adjudicated 427 appeals. Of these, only 77 (18%) were upheld and 302 (71%) were overturned. In 2016, the BHA adjudicated 352 appeal. Out of these only 43 (12%) were upheld and 242 (69%) were overturned. *See* https://www.dhs.pa.gov/docs/Publications/Pages/Child-Abuse-Reports.aspx. (Last visited June 15, 2023).

CPSL provides that "[a]ny person named as a perpetrator . . . in an indicated report of child abuse" may either "request an administrative review by, or appeal and request a hearing before, the [DHS] secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the CPSL]." 23 Pa. C.S. § 6341(a)(2); *see* 55 Pa. Code §§ 3490.40, 3490.106a. This includes the right to a timely hearing to determine the merits of the appeal, including testifying witnesses, cross-examination, and evidence. 23 Pa. C.S. § 6341(c.2). Respondents assert that the administrative review by the Secretary and further statutory appeal and hearing process serve as a second check (the first being the investigation and standards for abuse determinations by county agency) to minimize any erroneous determination or listing on the ChildLine Registry. We are not convinced that the post-deprivation hearing in these circumstances affords Petitioner and other teachers the opportunity to be heard at a meaningful time and in a meaningful manner.

"In terms of the right to be heard at a meaningful time, the second *Mathews* element reflects that avoiding erroneous deprivations before they occur is an important concern under the Due Process Clause. There is thus a general preference that procedural safeguards apply in the pre-deprivation timeframe." *Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018).

In *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970), the United States Supreme Court considered whether due process required that recipients of public assistance benefits be entitled to an evidentiary hearing before their benefits were terminated. Under the then-current process, a caseworker who had doubts about the recipient's continued eligibility could, after an informal pre-termination review, immediately terminate benefits. No pre-termination hearing was provided, but recipients were provided with a post-termination fair hearing. *Id*. at 258-60. The

34

United States Supreme Court held that when welfare benefits are discontinued, only a pre-termination evidentiary hearing provides the welfare recipient with due process. *Id.* at 264. The United States Supreme Court reasoned that that "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." *Id.* Concluding that the recipient's interests outweighed governmental interests in conserving fiscal and administrative resources, the United States Supreme Court explained:

> The requirement of a prior hearing doubtless involves some greater expense, and the benefits paid to ineligible recipients pending decision at the hearing probably cannot be recouped, since these recipients are likely to be judgment-proof. But the State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures for prompt pre-termination hearings and by skillful use of personnel and facilities. Indeed, the very provision for a post-termination evidentiary hearing in New York's Home Relief program is itself cogent evidence that the State recognizes the primacy of the public interest in correct eligibility determinations and therefore in the provision of procedural safeguards. Thus, the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens. As the District Court correctly concluded, "(t)he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal."

*Goldberg*, 397 U.S. at 266.

In *Pennsylvania Bar Association v. Pennsylvania Insurance Department*, 607 A.2d 850 (Pa. Cmwlth. 1992), this Court held that before an attorney's name could be placed on a suspected fraud list because his/her client was suspected of fraud, the Commonwealth was required to give the attorney notice and an opportunity to be heard. There, section 1822 of the Vehicle Code, 75 Pa. C.S. § 1822, created an index of suspected fraudulent automobile insurance claims. As part of the index, the names of the attorneys representing the suspected fraudulent claims were included in the index. 607 A.2d at 854. The Pennsylvania Bar Association (PBA) challenged the constitutionality of section 1822, contending that the inclusion of its members' names in the index without notice and an opportunity to be heard was an unconstitutional harm to their reputations. In response, the Commonwealth argued that the index was not publicly disclosed but was only published to insurers and several other categories of individuals. This Court rejected that argument, explaining that the attorneys' inclusion on the index would "inevitably lead[] to the injury of these attorneys' reputations, based upon suspicion alone." 607 A.2d at 854. We further observed that allowing attorneys to seek expungement after-the-fact was inadequate, explaining that "[t]he United States Supreme Court has recognized that notice is the most basic requirement of due process. Notice is necessary both to inform the interested parties of the pending action and to provide an opportunity to present objections." *Id*. at 856. We reasoned that by the time the listing was brought to the attorney's attention, the damage to him/her may have already been done, and he/she may have lost the opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. at 857.

We applied the same rationale recently in *Fraternal Order of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531 (Pa. Cmwlth. 2021). There, the Philadelphia district attorney began compiling a "Do Not Call List" of

36

officers who, in the district attorney's view, were "tainted." The officers filed a lawsuit arguing that their placement on the "Do Not Call List" served as a stain on their professional reputations and violated their rights to due process. Labeling the "Do Not Call List" a "blacklist of sorts," this Court determined that the officers had a constitutionally protected interest in their professional reputation, which required notice and an opportunity to be heard prior to their placement on the list. We explained "the appellant police officers should not be required to wait until damage to their reputations has been done before they are provided a meaningful opportunity to be heard. As in *Pennsylvania Bar Association*, the negative stigma of being included on a Do Not Call List is a threat to the appellant police officers' reputations." *Id*. at 552.

Under the CPSL, the opportunity to challenge the appropriateness of one's placement on the ChildLine Registry comes only after the fact, and as such it is akin to the delayed post-deprivation hearing denounced in *Goldberg*. Like the sudden and unexpected loss of welfare benefits addressed in *Goldberg*, the placement on the ChildLine Registry causes an immediate and irreparable harm to the teacher's reputation and employment prospects. As in *Goldberg*, we conclude the risks here are too high for a teacher and "the possibility for honest error or irritable misjudgment too great" to allow damage to the teacher's reputation and employment interests without giving her a chance, if she so desires, to be fully informed of the case against her so that she may contest its basis and produce evidence before an impartial examiner in rebuttal. *Goldberg*, 397 U.S. at 266. By the time the post-deprivation hearing is held, the damage to the teacher's reputation has already been done and might not be capable of being undone by a later finding that the allegations of abuse were unfounded.

Applying the above precepts to the instant matter, we conclude that, by its nature, the post-deprivation hearing is substantially ineffectual and constitutionally

37

deficient because the adjudicatory process takes place after the act of deprivation has taken place.  As the above cases teach, procedural due process requires opportunity to confront and cross-examine adverse witnesses at a time **prior** to actual deprivation. Because the CPSL fails to provide teachers with adequate protection **prior** to the critical moment when deprivation occurs, it fails to protect the private interests of Petitioner and other teachers.

### *Value of Additional Safeguards*

The second part of the second *Mathews* factor is the value, if any, of additional safeguards.  The fact that so many hearings resulted in reversals suggests that there is a probable value in adding procedural safeguards, such as a pre-deprivation hearing to the process for oral presentation of evidence, and for confrontation and cross-examination of adverse witnesses.

In this particular case, had Petitioner been afforded a hearing before being named in an indicated report on the ChildLine Registry, a neutral adjudicator could have considered and weighed Petitioner's evidence/testimony that

- walking a student up and down stairs at a brisk pace is a non-aversive behavioral support technique utilized in the School District in cases where an autistic child is in a highly escalated state.

- the technique is called "heavy work" or "proprioceptive input" in the behavioral science literature. While the most common form of heavy work is a weighted vest, the literature also supports climbing stairs to assist children in controlling responses to sensory stimuli.

- the school principal approved the use of the technique in the past for use on an 8[-]year[-]old student with very similar behaviors to the student in the instant

38

matter. In the plan for the other student, the School District explained the technique as follows. "If [the student] goes into a severe tantrum . . . it is most beneficial to get this energy out in non-desired tasks. . . The most effective way to do this is to walk [the student] at a very brisk pace up and down the hall or stairs. This strategy has worked time and time again. This event could last for as little as 5 minutes but as long as it takes to get [the student] to calm down and release his energy."

- on September 14, 2018, [Petitioner] believed that she was implementing a previously-approved therapeutic approach to escalated children with autism. Because this approach was used on other children with similar disabilities, she did not believe that she was harming the child or putting him at serious risk. On the contrary, she believed that she was helping the child reset his brain and gain control over his body.

- the manner in which the video recording is present distorts the facts. It appears that the intervention was recklessly implemented in a continuous manner over 30 minutes. This is not the case. In total, [Petitioner] implemented the technique for approximately 30 minutes over a four hour time period. The longest interval lasted 16 minutes. The time breakdown is as follows:

    • The first interval lasted a little less than 2 minutes: from 10:57:49 a.m. to 10:59:33. [Petitioner] and the student then walked through the halls.

    • The second interval lasted 9 minutes from 11:02:26 to 11:11:30. Part of this time, another person was performing the technique with the student.

> • The third interval lasted 16 minutes from 11:19:40 to 11:37:52 a.m. Throughout this time, the student was escorted by three different individuals, including [Petitioner]. Multiple breaks were built into the intervention.
>
> • After the third interval, the video shows [Petitioner] and the student in the hall. At 11:55:30, the student is literally climbing the walls of the hallway. This is after he was walking the stairway for 27 minutes. [Petitioner] is seen using the "child control position" that is taught to most special education teachers throughout the Commonwealth.
>
> • The fourth interval lasted 41 seconds, from 12:09:12 [p.m.] to 12:09:53.
>
> • The final interval lasted approximately 2.5 minutes, from 15:02:57 [p.m.] to 15:05:25.

- throughout the entire process, [Petitioner] took many breaks and held the student in a manner to ensure he did not harm himself.

- this particular child, when in these episodes, would thrash about on the floor, punch others, and slam himself against various objects and that she utilized the techniques upon which she was trained to prevent injury to the student and the student was not, in fact, injured.

(Request for Administrative Appeal, Exhibit C to Petitioner's Reply Brief.)

A pre-deprivation hearing would have provided additional procedural safeguards by allowing Petitioner to present these disputed adjudicative facts. A

40

neutral arbitrator could have, after making credibility determinations and weighing that evidence, concluded from the above that Petitioner did not commit child abuse as defined by the CPSL.

### c. *Countervailing Government Interest/Administrative Burdens*

The final step of the *Mathews* balancing test is to assess the government's interests and compare them to what we have already found to be Petitioner's weighty interests. *Mathews*, 424 U.S. at 335.

### *Government's Interests*

Petitioner readily acknowledges, as she must, that the Commonwealth clearly has an important interest in protecting children from abuse. There is no doubt that Pennsylvania has a vital interest in preventing child abuse and that the creation of a central database, such as the ChildLine Registry, is an effective and responsible means for Pennsylvania to secure that interest. *See Humphries*, 554 F.3d at 1194; *Pennsylvania State System of Higher Education, Lock Haven University v. Association of Pennsylvania State College and University Facilities*, 193 A.3d 486, 499 (Pa. Cmwlth. 2018) (explaining that the CPSL was enacted for the overarching purpose of protecting children from abuse). Our Supreme Court has long recognized that "the Commonwealth's interests in the need to prevent child abuse and to protect abused children from further injury is fostered by maintenance of the statewide central registry identifying perpetrators of abuse." *G.V.*, 91 A.3d at 673 (quoting *P.R. v. Department of Public Welfare, Office of Hearings and Appeals*, 801 A.2d 478, 483 (Pa. 2002)). The Supreme Court and General Assembly have described the Commonwealth's interests as an "urgent need" which includes protecting both the child that was abused and any children who may be potentially abused. *Id.*; 23 Pa. C.S. § 6302(a). The CPSL is replete with provisions calling for urgent and timely action to prevent child abuse.

41

*See* 23 Pa. C.S. § 6302(a) (discussing urgent need); § 6302(b) (calling for swift investigation of suspected abuse); § 6333 (continuous availability of DHS to receive reports and identify prior reports).

Thus, it is without question that the Commonwealth has a critical interest in keeping child abusers out of our schools.

### *Administrative Burdens*

A post-deprivation remedy may be sufficient under certain circumstances, and there are occasions when a hearing may legitimately be held after the act of deprivation has taken place. For example, a meaningful post-deprivation remedy may satisfy due process where it is not "feasible" to provide pre-deprivation due process. *Bundy*, 184 A.3d at 557. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517 (1984) (deprivation occurred as a result of a prison cell search); *Parratt v. Taylor*, 451 U.S. 527 (1981) (deprivation occurred when prison employees accidentally lost an inmate's property).

Respondents argue that a pre-deprivation hearing in these circumstances would not be feasible. They advocate that minimal procedural safeguards facilitate the Commonwealth's efforts to limit children's exposure to abuse because they allow the Commonwealth to respond quickly to isolate children from potentially dangerous contact with adults on the first indication of possible maltreatment and forewarn providers and licensing agencies of possible future harm. Respondents argue that the Court should defer to the carefully constructed timeline and post-deprivation hearing procedure established by the General Assembly in the CPSL. They offer the following to illustrate the practical difficulties with interjecting a pre-deprivation hearing into the 60-day window for the county agency to investigate and issue a report of unfounded, indicated, or founded child abuse:

What if the alleged perpetrator is unavailable in the 60[-]day window but seeks a hearing? What if the perpetrator sought a continuance of hearing beyond the 60[-]day window? What if witnesses an alleged perpetrator wishes to testify were unavailable? Who is to conduct such a hearing and what adjudication, if any, is to come from the hearing? Will there be appeal rights and, if so, will an appeal hold up the investigation?

(Respondents' Br. at 39-40.)

Respondents further posit that interjecting a pre-deprivation hearing process before an alleged perpetrator is listed on the ChildLine Registry would render the post-deprivation process provided by the General Assembly meaningless. They contend that an alleged perpetrator invoking pre-deprivation review faced with an adverse ruling would likely appeal that determination, and it is possible that the appeal would determine whether the alleged perpetrator should be included on an indicated or founded report. They submit there would be no need to invoke the statutory post-deprivation hearing process to answer the same question. According to Respondents, to avoid this absurd result, the Court should rule that the urgent nature of child abuse situations and the post-deprivation process provided by the General Assembly satisfies due process of alleged perpetrators.

These arguments, as compelling as they are, do not convince the Court that there is no solution within the limits of practicability. First, as the United States Supreme Court explained in *Fuentes*, "there are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. These situations, however, must be truly unusual." 407 U.S. at 90 (citation omitted). The United States Supreme Court went on to observe:

A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right. . . . Procedural

43

due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are about to be taken.

The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones. *Stanley v. Illinois*, 405 U.S. 645, 656 [(1972)].

*Id.* at 90 n.22.

Moreover, the theoretical questions Respondents pose are not for this Court to answer. It is not the business of a court adjudicating procedural due process rights to create new procedures or remedy a statutory deficiency. It is for the General Assembly to devise a response or adopt proper methods consistent with a court's ruling that a statutory scheme is unconstitutional. We only note that Petitioner has provided unchallenged evidence that only 75 out of the 5,655 alleged perpetrators named in either indicated or founded reports of child abuse in 2019 were school employees.[23] Thus, the number of pre-deprivation hearings afforded to teachers would be relatively minimal. Further, because DHS already has in place procedures to conduct administrative appellate review, it would seem that making that process available to teachers prior to placement on the ChildLine Registry would create only a slight

---

[23] This statistic was roughly the same in previous years. In 2018, only 78 out of 5,968 alleged perpetrators were school employees. In 2017, 113 out of 5,623 were school employees. *See* https://www.dhs.pa.gov/docs/Publications/Pages/Child-Abuse-Reports.aspx. (Last visited June 15, 2023).

administrative burden. In the absence of any evidence from Respondents that a pre-deprivation hearing will be unfeasible or unduly burdensome when compared to a post-deprivation hearing, we conclude that the post-deprivation remedy is not sufficient under these circumstances to satisfy due process.

Moreover, it does not appear that a pre-deprivation hearing would be counterintuitive to the urgent nature of child abuse situations in the school setting. Under the CPSL, once a report of suspected abuse is received, the county agency must immediately provide or arrange for services necessary to protect the child. 23 Pa. C.S. § 6368. When the alleged abuse involves teachers and other school employees, the county agency must provide school employers with notice of any investigation involving a school employee at the outset of an investigation. 23 Pa. C.S. § 6340(a)(13)(i). School employers are then required to "immediately implement a plan of supervision or alternative arrangement for the individual under investigation to ensure the safety of the child and other children who are in the care of the school." 23 Pa. C.S. § 6368(i). Petitioner contends that in practice, a "plan of supervision or alternative arrangement" means that school employees accused of child abuse are either: (1) placed on leave and ordered to not return to the premises or interact with students until further notice; or (2) placed under constant supervision by an administrator or supervisor when in direct contact with children. (Petitioner's Br. at 26.) Respondents do not challenge her account, nor do we have any reason to doubt that is the case.

Given these extensive safeguards already in place, the Commonwealth does not appear to have a strong interest in denying accused teachers a pre-deprivation process before listing them on the ChildLine Registry on the grounds that doing so would expose the child and other children from further abuse. There is no reason to

conclude that these procedures would be less effective if pre-deprivation due process was provided before DHS can name a teacher on an indicated report.

In sum, as the above analysis demonstrates, the interests of Petitioner and other teachers are strong, the risk of error is high, and DHS's interest in forgoing a pre-deprivation hearing is low. If erroneous information is added to the ChildLine Registry, the damage to the teachers may be done before a post-deprivation hearing is conducted to remove that information. Therefore, we conclude that due process requires that Petitioner and other teachers must be provided a hearing prior to being listed as a perpetrator of abuse in an indicated report on the ChildLine Registry. Where an accused challenges the truthfulness of her accusers and contends, as a matter of fact, that the charge against her is false, she must be allowed, as a function of procedural due process, in addition to fair notice, to be present, to adduce evidence, to be represented by counsel, to confront the witnesses against her and to receive a written decision. The current CPSL, as applied to Petitioner and other teachers, does not afford Petitioner minimal due process protection and has deprived Petitioner and other teachers of their procedural due process rights by failing to provide a pre-deprivation hearing. These deficiencies are not cured by the post-deprivation hearing.[24]

Accordingly, we conclude that a pre-deprivation administrative hearing before the BHA must be provided to Petitioner and other teachers to safeguard important fundamental constitutional rights. Petitioner's application for summary relief as to **Count I** of the PFR is granted.

## 2. Count III – Declaratory Relief – Constitutionality of Section 6303 of the CPSL

---

[24] If a court determines that a pre-deprivation hearing is constitutionally required, "no amount of post-deprivation process is adequate to satisfy the demands of [due process]." *Burns v. Alexander*, 776 F. Supp. 2d 57, 84-85 (W.D. Pa. 2011).

In her second issue, Petitioner seeks summary relief on **Count III** of her PFR, which requests a declaratory judgment that section 6303 of the CPSL is constitutionally deficient because it provides no pre-deprivation due process to individuals listed as perpetrators of a "founded" report of child abuse when the basis of the founded report is acceptance into an ARD program. Although Petitioner acknowledges she has not yet been named as a perpetrator in a founded report, she contends that because she has entered into ARD, "DHS will imminently enter [her] name on the ChildLine Registry as a perpetrator in a founded report of child abuse solely on the basis of her acceptance into an ARD program involving the same factual circumstances underlying a report of child abuse to the ChildLine database." (PFR, ¶87.)

Section 6303 of the CPSL (Definitions) defines a "founded report" as follows:

> "Founded report." A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:
>
> * * *
>
> (2) **There has been an acceptance into an [ARD] program** and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse.

23 Pa. C.S. § 6303 (emphasis added).

In *J.F.*, J.F. was identified as a perpetrator of abuse of her 15-month-old twin children. J.F. filed an administrative appeal. While her administrative appeal was pending, J.F. entered into ARD for two criminal counts of endangering the welfare of children. As the result of J.F.'s entry into ARD, the county agency changed the status of the child protective services report from "indicated" to "founded" and moved to

47

dismiss J.F.'s pending administrative appeal. 245 A.3d at 664. DHS granted the county agency's motion to dismiss J.F.'s appeal. J.F. appealed to this Court, arguing that she was entitled to a hearing to determine the merits of her appeal. She argued that in cases of *indicated* reports, an accused is entitled to a *post-deprivation* hearing under Section 6341 of the CPSL. She argued that an accused named in *founded* reports should also be entitled a hearing, but Section 6341 provides only that "[a] person named as a perpetrator of a founded report of child abuse must provide to [DHS] a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated." 23 Pa. C.S. § 6341. The issue eventually reached our Supreme Court, which held that because the founded report was based on ARD, as opposed to a criminal conviction or a dependency adjudication, there was no agency hearing in which J.F. had an opportunity to be heard. Accordingly, the *J.F.* Court held that, in the absence of another appropriate forum to challenge DHS's adjudication of child abuse in a recorded evidentiary hearing, a named perpetrator in a report designated as founded based upon the perpetrator's voluntary entry into ARD is entitled to an administrative hearing.

Petitioner asserts that *J.F.* did not answer the question of whether the administrative hearing should occur *after* an accused enters ARD but *before* or after the perpetrator is listed in a founded report.[25] She asks us to decide that question here and submits that the administrative hearing required in *J.F.* should, as a matter of due process, occur *pre-deprivation*. In other words, she submits that the hearing required in *J.F.* should be provided after entry into ARD – but before the report's status is

---

[25] We do not agree with Petitioner that the Supreme Court in *J.F.* did not answer the question of whether the administrative hearing should occur before or after the accused enters ARD. In that case, the accused mother appealed the founded report and argued that she was entitled to an evidentiary hearing *after* she entered an ARD program for a criminal charge of child endangerment. That is the question the Supreme Court answered.

48

changed from indicated to founded. Revisiting the *Mathews* factors, she argues that perpetrators named in a founded report based on entry into ARD immediately lose their teaching certificates; there is a risk of erroneous deprivation because the perpetrator has only been through ARD and there is no adjudication of guilt; and there would be minimal burden or concern with providing a pre-deprivation hearing.

In response, and in their application for partial summary relief, Respondents argue that Petitioner lacks standing to mount this challenge to the constitutionality of the CPSL as it relates to *founded* reports because she has yet to be listed in the ChildLine Registry as a perpetrator in any founded report of child abuse. They further contend that, although Petitioner entered ARD, she has not demonstrated a likelihood that she will, with certainty, become a subject of a founded report.

"In Pennsylvania, a party to litigation must establish as a threshold matter that he or she has standing to bring an action." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016) (citing cases). To satisfy the standing requirement, a litigant must be "aggrieved," *i.e.*, he or she must have a "substantial, direct, and immediate interest in the matter." *Id*. "To have a substantial interest, concern in the outcome of the challenge must surpass 'the common interest of all citizens in procuring obedience to the law.'" *Id*. (quoting *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)). To satisfy the criterion of directness, a litigant must "demonstrat[e] that the matter caused harm to the party's interest." *Id*. at 140 (internal quotation marks omitted). "Finally, the concern is immediate if that causal connection is not remote or speculative." *Id*. (internal quotation marks omitted).

In some situations, our courts have held that although the harm alleged had not yet been imposed, the challenge was nevertheless not speculative because the harm would be imposed by operation of law. For example, in *Gregory v. Pennsylvania*

49

*State Police*, 160 A.3d 274 (Pa. Cmwlth. 2017) (Cohn Jubelirer, J., single-judge op.), we held that an inmate who was granted parole but not yet released had an immediate interest in whether the Sexual Offender Registration and Notification Act[26] (SORNA) applied to him. Relying on *Williams v. Department of Corrections* (Pa. Cmwlth., No. 353 M.D. 2014, filed October 15, 2015) (*en banc*), where we held death row inmates had standing although there were no active death warrants in effect, we determined "the harm [wa]s not speculative *because the harm will be imposed by operation of law*." *Gregory*, 160 A.3d at 277 (emphasis added). We explained that as soon as his home plan was approved, the inmate would be subject to SORNA's registration requirements. *Id*. With regard to ripeness, we held that the issues were fully developed for the Court's review, and waiting for SORNA to be imposed would add little to this Court's review of the legal issues raised. *Id*. Regarding hardship, we concluded that the inmate would face hardship by delaying review and waiting for the Pennsylvania State Police to place him on the sex offender registry.

Petitioner argues that she "will" imminently be listed in a founded report as the result of her entry into ARD because under the CPSL, the county agency is required, *by operation of law*, to change the status of the reports from indicated to founded as the result of an accused's entry into ARD. We agree.

Here, Petitioner has standing to pursue Count III because, by law, an accused's entrance into an ARD program transforms a pending or indicated report of child abuse into a founded report. It is immaterial that CYS, the relevant local child protective services agency, has not revised its investigative determinations or that DHS has not updated the ChildLine Registry, since the effect of Petitioner's admittance into an ARD program is unmistakably clear from a legal standpoint. Indeed, the child abuse

---

[26] 42 Pa. C.S. §§ 9799.10-9799.41.

allegations made against Petitioner must now be considered a founded report, despite the fact that those agencies have thus far, for reasons unexplained, avoided some of their ministerial and nondiscretionary responsibilities, because that is what the CPSL requires. *See* 23 Pa. C.S. §§ 6303, 6338(a). We therefore conclude that Petitioner has articulated an interest in Count III that is substantial, direct, and immediate, and consequently deny Respondents' cross-application for partial summary relief as to Petitioner's standing to make the claim she presents therein.

Having concluded that Petitioner has standing to pursue the claim she set forth in Count III of the PFR, we turn to Petitioner's assertion that she is entitled to a declaration regarding the unconstitutional nature of CPSL's procedure relating to the treatment of an accused's acceptance into an ARD program and the change in the report's status from indicated to founded.

For the most part, our analysis as set forth above applies equally here. Petitioner's interests in her reputation and in pursuing her employment as a teacher are protected by due process. Teachers, like Petitioner, named as perpetrators in founded reports face significant reputational consequences and employment impacts that are unique as the result of being named in a founded report. Educators who are named as perpetrators in a founded report of child abuse lose their right to work in their chosen profession. 24 P.S. § 2070.9d(a)(1); 23 Pa. C.S. § 6344(c). This revocation, and the reasons for it, are published on a publicly accessible Internet website. Section 15 of the Educator Discipline Act, 24 P.S. § 2070.15(d).[27]

We agree with Petitioner that there is a high risk of erroneous deprivation of these rights if an educator who has entered an ARD program is named in a founded report without being afforded a hearing. As noted, our Supreme Court has already

---

[27] Added by the Act of December 14, 1989, P.L. 612.

51

held, given the nature of ARD proceedings, there is no "full and fair" opportunity to be heard provided in due course when the founded report reflects an ARD. *J.F.*, 245 A.3d at 673. Our Supreme Court held that, because the founded report was based on ARD, there was no agency hearing in which J.F. had an opportunity to be heard. Accordingly, the *J.F.* Court held that, in the absence of another appropriate forum to challenge an adjudication of child abuse in a recorded evidentiary hearing, a named perpetrator in a report designated as founded based upon the perpetrator's voluntary entry into ARD is entitled to an administrative hearing.

Because being named in a founded report unquestionably affects her reputational rights and her rights to pursue her career as an educator, Petitioner is entitled to a "full and fair" opportunity for a hearing at a time when the deprivation can still be prevented. *Zinermon*, 494 U.S. at 132. We hold here that the administrative hearing must be held *before* the educator is named in the founded report.

Accordingly, for these reasons, we conclude that Petitioner and other educators like her are entitled to pre-deprivation process in the form of a BHA hearing before entry into the ARD program can been deemed to have transformed an indicated child abuse report into one that is founded.

Petitioner's application for partial summary relief to the extent it seeks relief under **Count III** of the PFR is granted. Respondents' application is denied as it pertains to this Count.

### 3. Count V - Mandamus

In her third issue, Petitioner seeks summary relief on **Count V** of her PFR, which seeks a writ of mandamus directing DHS to remove the report on Petitioner from the ChildLine Registry as she was not provided with appropriate due process protections.

52

Mandamus is an extraordinary remedy which is designed to compel the performance of a purely ministerial act or mandatory duty on the part of a public officer. *Flaherty v. City of Pittsburgh*, 515 A.2d 91 (Pa. Cmwlth. 1986). In order to prevail in her action for mandamus, Petitioner must establish that she has a clear legal right to the relief requested, that Respondents have a corresponding duty to perform a ministerial act or mandatory duty, and that no other adequate remedy at law is available. *Borough of Plum v. Tresco*, 606 A.2d 951 (Pa. Cmwlth. 1992).

Here, Petitioner has not established her right to mandamus relief because she has a clear and adequate remedy at law, which she is free to pursue. That is, Petitioner may request that the Secretary, under section 6341(a)(1) of the CPSL,[28] expunge her name from the ChildLine Registry unless and until such time as she is provided with a pre-deprivation hearing, as more fully described in this Opinion.

Accordingly, Petitioner's application for partial summary relief is denied as to **Count V**, and her petition in mandamus is dismissed.

---

[28]Section 6341(a)(1) of the CPSL provides:

> (a) General rule.--Notwithstanding section 6338.1 (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):

> (1) At any time, the secretary may amend or expunge any record in the Statewide database under this chapter upon good cause shown and notice to the appropriate subjects of the report. The request shall be in writing in a manner prescribed by [DHS]. For purposes of this paragraph, good cause shall include, but is not limited to, the following:

> (i) Newly discovered evidence that an indicated report of child abuse is inaccurate or is being maintained in a manner inconsistent with this chapter.

23 Pa. C.S. § 6341(a)(1).

## B.  **RESPONDENTS' CROSS-APPLICATION FOR PARTIAL SUMMARY RELIEF**

Much of Respondents' cross-application for partial summary relief echoes the arguments made in opposition to Petitioner's application for partial summary relief. There is one argument, however, that does not overlap. In their cross-application, Respondents argues that insofar as Petitioner asserts claims on behalf of all other school employees affected by the CPSL or any other individual other than herself, because Petitioner has not brought a class action, has not joined these non-parties via permissive joinder, and does not have third-party standing to bring these claims on their behalf, the Court should dismiss all such claims. (Respondents' Cross-Application for Summary Relief ¶ 12.) We must disagree.

There have been many cases where this Court and our Supreme Court have considered constitutional challenges brought by an individual and concluded that a law was unconstitutional as to a group of individuals. *See, e.g.*, *In re J.B.*, 107 A.3d 1 (Pa. 2014) (where, although appellants did not bring the case on behalf of all juveniles, the Supreme Court held that "the application of SORNA's lifetime registration provision as applied to juveniles is unconstitutional"); *Wajert v. State Ethics Commission*, 420 A.2d 439, 442 (Pa. 1980) (in a case brought under the Public Official and Employee Ethics Act[29] by a former common pleas court judge on behalf of himself, the Supreme Court concluded that the law was unconstitutional as to all attorneys because it infringed upon the Supreme Court's power to regulate the practice of law); *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1263 (Pa. Cmwlth. 2000), (although action was brought by two lawyers, the court held that what is known as the

---

[29] 65 Pa. C.S. §§ 1101-1113.

Lobbying Disclosure Act[30] was unconstitutional as applied to all lawyers who engaged in lobbying).

## IV. CONCLUSION

We recognize the burdens agencies such as DHS face. Nonetheless, it is critically important that we ensure that our agencies act within the bounds of the Constitution.

For the reasons stated herein, we conclude that, as applied to Petitioner and other teachers, Section 6368 of the CPSL does not provide adequate procedural due process protection. After consideration and application of the three factors of the *Mathews* test, the Court finds that as to **Counts I** and **III** all three *Mathews* factors, as applied to this case, weigh in favor of Petitioner and other teachers and against Respondents. On balance, Petitioner's constitutional rights and the high risk of erroneous deprivation, when compared to the Commonwealth's interests in denying Petitioner a pre-deprivation hearing,[31] the feasibility of providing a prompt pre-deprivation hearing, and the many safeguards that are in place to protect the students once a possible abuser is identified, tilt toward the conclusion that Petitioner and other teachers must be afforded a pre-deprivation hearing before an impartial ALJ before being listed as a perpetrator in an indicated report on the ChildLine Registry and in a founded report, based on ARD. The post-deprivation process as applied to Petitioner and other teachers is simply not adequate to cure the constitutional violation caused by placement on the ChildLine Registry without a pre-deprivation hearing.

---

[30] 65 Pa. C.S. §§ 13a01-13a11.

[31] We reiterate that it is without question that the government has a significant interest in keeping child abusers out of our schools. However, as the Superior Court of New Jersey in *East Park* astutely observed, it also has, or should have, an equal interest in not stigmatizing the innocent or foreclosing them from employment and other opportunities. 714 A.2d at 347-48.

Petitioner's application for partial summary relief as to **Counts I** and **III** of the PFR is granted.  Petitioner's application for partial summary relief as to **Count V** of the PFR is denied.  Respondents' cross-application for partial summary relief is denied, except to the extent it requests judgment in its favor as to **Count V** of the PFR.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.F.,
                Petitioner

         v.

Pennsylvania Department of Human
Services; Teresa D. Miller, in her
official capacity as secretary of the
Department of Health and Human
Services; Pennsylvania Professional
Standards and Practices Commission,

             Respondents

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 574 M.D. 2020

## *ORDER*

AND NOW, this 11th day of July, 2023, Petitioner S.F.'s Application for Partial Summary Relief as to **Counts I** and **III** of the Petition for Review is hereby **GRANTED**. Petitioner S.F.'s Application for Partial Summary Relief as to **Count V** of the Petition for Review is hereby **DENIED**.

The Cross-Application for Partial Summary Relief filed by Respondents Pennsylvania Department of Human Services, Teresa D. Miller, in her official capacity as Secretary of the Department of Health and Human Services, and the Pennsylvania Professional Standards and Practices Commission is hereby **GRANTED** only as to **Count V** of the Petition for Review only. It is **DENIED** in all other respects.

_____
PATRICIA A. McCULLOUGH, Judge